UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LEAH HEILPRIN, | Civil Action No.: |
| Plaintiff, | Section: |
| v. | Division: |
| TONTI MANAGEMENT CO. L.L.C.; SUNLAKE APARTMENTS, L.L.C.; POLO RUN APARTMENTS, L.L.C.; FIVE PROPERTIES, L.L.C., | Judge: |
| | Magistrate Judge: |
| Defendants. | |

**COMPLAINT FOR INJUNCTIVE RELIEF,
DECLARATORY RELIEF, AND DAMAGES**

Plaintiff, Leah Heilprin, by and through undersigned counsel, brings this action for declaratory relief and damages against Defendants Tonti Management Co., L.L.C. ("Tonti Management"), Sunlake Apartments, L.L.C., Polo Run Apartments, L.L.C., and Five Properties, L.L.C., for discriminating against Ms. Heilprin on the basis of her disability in violation of the Fair Housing Act ("FHA") set forth in Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601, *et seq*. Defendants refused to make a reasonable accommodation in rules, policies, practices, or services, when such an accommodation was necessary to afford Ms. Heilprin an equal opportunity to use and enjoy a dwelling. As a result, Ms. Heilprin suffered economic injuries and damage to her physical and emotional health.

**JURISDICTION & VENUE**

1.      This is an action alleging housing discrimination on the basis of disability in violation of the FHA.

2.      This Court has original subject matter jurisdiction over this action pursuant

to 28 U.S.C. §§ 1331, 1343(a), and 42 U.S.C. § 3613(a)(1)(A).

3.      Venue is proper in this district under 28 U.S.C. § 1391(b) because: (1)
Defendants reside in the Eastern District of Louisiana; and (2) the events and omissions
giving rise to the claims alleged in this Complaint occurred in the Eastern District of
Louisiana.

## PARTIES

4.      Plaintiff LEAH HEILPRIN is a resident of Seattle, Washington and a
citizen of the United States.

5.      Upon information and belief, Defendant TONTI MANAGEMENT CO., L.L.C.
is a limited liability corporation incorporated under the laws of Louisiana and was at all times
relevant to this complaint the owner and manager of Sunlake Apartments and Polo Run
Apartments. Tonti Management's principal place of business is 4433 Conlin Street, Metairie,
LA 70006. It is one of the largest owners/operators of apartment complexes in the Greater New
Orleans area.

6.      Upon information and belief, SUNLAKE APARTMENTS, L.L.C. is a limited
liability company incorporated under the laws of Louisiana and was at all times relevant to this
complaint the owner and manager of Sunlake Apartments, located at 800 Joe Yenni Boulevard,
Kenner, LA 70065. Sunlake Apartments, L.L.C.'s principal place of business is 4433 Conlin
Street, Metairie, LA 70006.

7.      Upon information and belief, POLO RUN APARTMENTS, L.L.C. is a limited
liability company incorporated under the laws of Louisiana and was at all times relevant to this
complaint the owner and manager of Polo Run Apartments, located at 3801 West Napoleon
Avenue, Metairie, LA 70001. Polo Run Apartments, L.L.C.'s principal place of business is

4433 Conlin Street, Metairie, LA 70006.

8.      Upon information and belief, FIVE PROPERTIES, L.L.C. is a limited liability
company incorporated under the laws of Louisiana and was at all times relevant to this
complaint the owner and manager of Sunlake Apartments, located at 800 Joe Yenni Boulevard,
Kenner, LA 70065 and Polo Run Apartments, located at 3801 West Napoleon Avenue,
Metairie, LA 70001. Five Properties, L.L.C.'s principal place of business is 4433 Conlin Street,
Metairie, LA 70006.

9.      During all times relevant to this complaint, Defendant Tonti Management Co.,
L.L.C. held itself out as the rental/leasing agent for the apartment units located at Sunlake
Apartments and Polo Run Apartments.

**STATEMENT OF FACTS**

*Introduction*

10.      In April 2018, Leah Heilprin sought an apartment in Kenner, Louisiana
because she planned to attend cosmetology school there. Ms. Heilprin hoped to rent an
apartment within her budget in a safe and quiet community to alleviate the impact of her
disabilities.

11.      In early April 2018, Ms. Heilprin toured an apartment at Sunlake Apartments,
a complex in Kenner owned and managed by Tonti Management. Ms. Heilprin submitted a
rental application, but she did not qualify for tenancy due to her income and credit history. Her
disabilities had caused her to incur medical debts that negatively affected her credit history.

12.      Ms. Heilprin requested a reasonable accommodation from Tonti
Management, namely permitting her sister to guarantee or cosign her lease, explaining that her
unfavorable credit history was a direct result of her medical debt and disabilities. The granting

3

of that request would have afforded Ms. Heilprin equal opportunity to use and enjoy the dwelling.

13.     However, Tonti Managment, directly and through its agents, unlawfully discriminated against Ms. Heilprin based on her disabilities by denying her reasonable accommodation request on May 4, 2018.

14.     At the time Tonti Management denied Ms. Heilprin's request, it, as a matter of policy, permitted parents to guarantee the leases of their children, even those who had no income and unfavorable credit histories.

15.     Ms. Heilprin's reasonable accommodation request would not have financially or administratively burdened Tonti Management, nor would it have constituted a fundamental alteration to its rules or procedures. Ms. Heilprin did not ask for changes to the dwelling, nor did she ask for a rent reduction. Ms. Heilprin only asked to be permitted a familial guarantor with strong credit and high income in order to meet Tonti Management's requirements and ensure payment in full.

16.     Tonti Management refused to reasonably accommodate Ms. Heilprin again in September 2018 when she requested the same accommodation to rent an apartment at Polo Run Apartments, a complex in Metairie owned and managed by Tonti Management.

17.     As a result of Tonti Management's unlawful conduct, Ms. Heilprin suffered significant economic, emotional, and physical damages.

### *Ms. Heilprin Is a Qualified Individual with a Disability*

18.     Ms. Heilprin is a qualified individual with a disability as that term is defined

by the FHA, 42 U.S.C. § 3602(h).[1] She is HIV positive and has been diagnosed with bipolar disorder, borderline personality disorder, substance abuse disorder, and PTSD.

19.     Ms. Heilprin's disabilities impair her immune system and her cognitive and neurological functions; they substantially limit her ability to maintain relationships, communicate effectively, take proper physical care of herself, and manage her assets and finances. Without close management of her disabilities through treatment and medication, Ms. Heilprin would die.

20.     Cumulatively, Ms. Heilprin's disabilities substantially limit her in the major life activities of reproduction, taking care of herself, concentrating, communicating, and working.

21.     During the time that Ms. Heilprin sought to rent an apartment from Tonti Management, she received Social Security Disability Insurance in the amount of $1,375 every month.

### Ms. Heilprin's Financial History Is a Direct Result of Her Disabilities

22.     Ms. Heilprin has a poor credit history as a result of her disabilities. She has accumulated significant medical debt due to the high cost of her treatment and hospitalizations arising from her disabilities.

23.     In 2009, at the age of 19, Ms. Heilprin tested positive for HIV. Over the next four years, she received HIV treatment and was hospitalized on several occasions without medical insurance, sending her into substantial medical debt.

24.     Further, the symptoms of Ms. Heilprin's neurological disabilities, when

---

[1] The FHA uses the term "handicap" instead of the term "disability." Both terms have the same legal meaning. *See Bradgon v. Abbott*, 524 U.S. 624, 631 (1998).

untreated, have negatively impacted her finances. Ms. Heilprin's bipolar disorder and borderline personality disorder, when untreated, trigger uncontrolled shifts in her mood, energy, and concentration, including swings from mania to depression. As a result, Ms. Heilprin has experienced states of mania that, in the past, have caused her to compulsively spend and have interfered with her ability to properly manage her medical debt and finances.

### *Defendant Tonti Management's First Act of Discrimination*

25.     In the spring of 2018, Ms. Heilprin began searching for an apartment in Kenner or Metairie Louisiana because she was planning to attend cosmetology school in Metairie, Louisiana.

26.     At the time of her apartment search, Ms. Heilprin intended to start classes at the Vanguard College of Cosmetology in Metairie in the first or second week of June 2018.

27.     Ms. Heilprin also needed to find a new place to rent because her apartment was too expensive for her to afford on her Supplemental Security Income.

28.     Ms. Heilprin hoped to find an apartment in a quiet, suburban community that would promote her health and ameliorate the effects of her disabilities.

29.     As an individual with substance abuse disorder, it was especially important to Ms. Heilprin to secure a quiet, clean, and safe apartment outside of New Orleans to support her sobriety.

30.     On or around the beginning of April 2018, Ms. Heilprin went to Sunlake Apartments to inquire about renting an apartment.

31.     Sunlake Apartments is located at 800 Joe Yenni Boulevard, Kenner, LA 70065.

32.     Tonti Management owns and operates Sunlake Apartments.

33.     After taking a tour of the apartment complex, Ms. Heilprin completed an application form, paid the application fee, and left a deposit check with a Tonti Management representative.

34.     Ms. Heilprin asked the Tonti Management representative if she could apply with a co-signer or guarantor.

35.     The representative explained that Tonti Management allowed full-time students to apply with a co-signer.

36.     The representative explained that Tonti Management required all applicants to apply first independently; then, if Tonti Management denied the application, it would permit full-time students to reapply with a co-signer.

37.     The representative explained that, once Ms. Heilprin had applied and been denied, she could apply with a cosigner if she were a full-time student.

38.     Because Ms. Heilprin planned to attend cosmetology school, she understood that she would be able to reapply with a co-signer if Tonti Management denied her application.

39.     Ms. Heilprin's sister, Ashley Heilprin, who is an attorney in New Orleans, agreed to serve as her co-signer.

40.     Based on the representations of the Tonti Management representative, Ms. Heilprin understood she would be able to secure an apartment at Sunlake Apartments because she planned to enroll as a full-time student and her sister was willing to serve as her guarantor.

41.     Ms. Heilprin notified her current landlord that she intended to move out of her

apartment within 30 days. Ms. Heilprin needed to move out of her current apartment because it was too expensive.

42.     Several days after the tour at Sunlake Apartments, Tonti Management denied Ms. Heilprin's rental application, citing her income and credit history.

43.     Ms. Heilprin returned to Sunlake Apartments on April 26, 2018, and asked to reapply with a co-signor and to view a less expensive apartment.

44.     Tonti Management denied both requests.

45.     Ms. Heilprin asked the Tonti Management representative whether, since she was planning to enroll in the Vanguard College of Cosmetology and would be a full-time student in June, her sister could co-sign the lease. Ms. Heilprin explained that her sister was a high-earning attorney in New Orleans.

46.     The representative told Ms. Heilprin that Tonti Management only allowed parents to cosign its leases.

47.     Later that day, Ms. Heilprin's sister called Tonti Management and spoke with a representative.

48.     Ms. Heilprin's sister told the representative that she agreed to serve as Ms. Heilprin's guarantor. She stated that she was an attorney and understood the legal significance of serving as guarantor.

49.     Ms. Heilprin's sister also explained that Ms. Heilprin's mother could serve as a cosigner. Ms. Heilprin's mother is a physician.

50.     However, the representative told Ms. Heilprin's sister that each applicant must qualify individually.

51.      The representative then refused to take any of Ms. Heilprin's information for a credit check and declined to explore whether Ms. Heilprin's sister or mother would qualify Ms. Heilprin's application for the apartment.

52.      After Tonti Management denied Ms. Heilprin's request for a reasonable accommodation, Ms. Heilprin and her sister contacted the Greater New Orleans Fair Housing Action Center (GNOFHAC) for legal assistance relating to Ms. Heilprin's request for a reasonable accommodation.

53.      In a letter dated May 1, 2018, Elizabeth Owen, Legal Director of GNOFHAC, contacted Tonti Management on behalf of Ms. Heilprin.

54.      In that letter, Ms. Owen requested that Tonti Management grant Ms. Heilprin, a disabled person, the reasonable accommodation of permitting her sister to cosign her lease.

55.      Ms. Owen explained that Ms. Heilprin's poor credit was a direct result of medical debt caused by her disabilities.

56.      Ms. Owen asked that Ms. Heilprin be allowed to pay the full rent requested by Tonti Management with the assistance of a co-signor, Ms. Heilprin's sister, who would meet all of Tonti Management's financial criteria.

57.      On May 4, 2018, counsel for Tonti Management, James Rather, denied Ms. Heilprin the reasonable accommodation of a co-signor.

58.      At the time Ms. Heilprin attempted to rent from Tonti Management, it allowed students with no income and poor, little, or no credit to rent with a parental co-signor.

59.      Ms. Heilprin's reasonable accommodation request would not have imposed a financial or administrative burden on Tonti Management, nor would it have fundamentally

altered its rules, procedures, or policies.

60.     Ms. Heilprin did not ask for a reduction of the rent. Ms. Heilprin only asked to be permitted a familial guarantor with strong credit and high income in order to meet Tonti Management's financial application requirements and ensure payment in full.

61.     Tonti Management never inquired about Ms. Heilprin's sister's financial history or credit.

62.     Following Tonti Management's discriminatory conduct and denial of Ms. Heilprin's reasonable accommodation request, Ms. Heilprin had three weeks to secure another apartment, given that she had notified her landlord that she planned to move out of her current apartment.

63.     Ms. Heilprin could not find another place to live in Metairie within her budget of $650 per month. Ms. Heilprin's options were further limited because Tonti owns many of the apartments in Metairie.

64.     Without options, Ms. Heilprin was forced to rent an apartment in Central City, New Orleans. The apartment was small, dark, unclean, and located in an area of high drug use.

65.     Shortly after she moved into the apartment, Ms. Heilprin relapsed, was hospitalized, and subsequently entered Opelousas Treatment Facility on July 20, 2018.

### *Tonti Management's Second Act of Discrimination*

66.     In September 2018, Ms. Heilprin was completing her treatment at Opelousas Treatment Facility and was soon to be discharged.

67.     Ms. Heilprin resumed her apartment search because moving back to her apartment in Central City would threaten her recovery.

68.     As before, she hoped to find an apartment in a safe, quiet, suburban neighborhood outside New Orleans to support her recovery, mental health, and sobriety.

69.     On September 6, 2018, Ms. Heilprin called Polo Run Apartments in Metairie to inquire about renting an apartment.

70.     Polo Run Apartments is located at 3801 West Napoleon Avenue, Metairie, LA 70001.

71.     Tonti Management owns and operates Polo Run Apartments.

72.     Ms. Heilprin informed a Tonti Management representative that she was disabled and required a reasonable accommodation of a co-signor who would meet Polo Run Apartments' financial requirements.

73.     The representative informed Ms. Heilprin that she would discuss the accommodation request with her superiors and report back to Ms. Heilprin.

74.     Ms. Heilpin never received a return call from Tonti Management, despite leaving follow-up voicemails on September 8, 2018 and September 15, 2018.

75.     Pursuant to 42 U.S.C. § 3610, on March 12, 2019, Ms. Heilprin filed an administrative complaint with the U.S. Department of Housing and Urban Development ("HUD") alleging Tonti Management, Sunlake Apartments, and Polo Run Apartments discriminated against her on the basis of disability by denying her requests for a reasonable accommodation.

76.     HUD subsequently referred Ms. Heilprin's administrative complaint to the Louisiana Department of Justice, where an investigation is currently pending.

## INJURIES SUFFERED BY PLAINTIFF

77.     Tonti Management, directly and through its representatives and agents, discriminated against Ms. Heilprin on the basis of her disability when it denied her a reasonable accommodation.

78.     As a result of Tonti Management's discriminatory conduct, Ms. Heilprin suffered economic injuries and injuries to her physical and emotional health.

79.     Tonti Management's repeated refusal to reasonably accommodate Ms. Heilprin caused her embarrassment, humiliation, anxiety, and emotional distress.

80.     As a result of Tonti Management's refusal to reasonably accommodate Ms. Heilprin, she struggled to find another comparable apartment in her price range.

81.     Ms. Heilprin had little choice but to move into an unsafe apartment in a neighborhood of high drug use.

82.     The apartment's location negatively impacted her mental health and caused her significant anxiety and distress. It thus contributed to Ms. Heilprin's relapse and hospitalization.

83.     Ms. Heilprin suffered substantial economic injury as a result of Tonti Management's discrimination, including but not limited to: the Sunlake Apartment application fee; moving costs arising from Ms. Heilprin's forced move to Central City, New Orleans; and the hospitalization and treatment fees arising from her relapse.

84.     With respect to the conduct alleged above, Defendants acted with willful disregard, malice, or reckless indifference that its actions violated the Fair Housing Act.

85.     With respect to the conduct alleged above, Defendants are liable as owners,

operators, and managers of the rental properties located at Sunlake Apartments and Polo Run Apartments.

## STATEMENT OF CLAIMS

### First Cause of Action:

### Violation of the Fair Housing Act, 42 U.S.C. § 3604(f)

86.     Ms. Heilprin realleges and incorporates by reference paragraphs 1-85 as if fully set forth herein.

87.     Defendants injured Ms. Heilprin in violation of the FHA by refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations were necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

### Second Cause of Action:

### Violation of the Louisiana Equal Housing Opportunity Act, La. R.S. § 51:2606(A)(6)(c)(ii)

88.     Ms. Heilprin realleges and incorporates by reference paragraphs 1-83 as if fully set forth herein.

89.     By demonstrated conduct set forth above, Defendants discriminated against Ms. Heilprin on the basis of disability by refusing to make reasonable accommodation in rules, policies, practices, or services, when such accommodation was necessary to afford such person equal opportunity to use and enjoy a dwelling, in violation of the Louisiana Equal Housing Opportunity Act, La. R.S. § 51: 2606(A)(6)(c)(ii).

## PRAYER FOR RELIEF

**Wherefore**, Plaintiff Leah Heilprin prays:

a)      That the Court declare Defendants' actions complained of herein to be in violation of the FHA;

b)      That the Court permanently enjoin Defendants and their agents, employees, and successors from discriminating against any person on the basis of disability in violation of the Fair Housing Act and the Louisiana Equal Opportunity Housing Act;

c)      That the Court award compensatory damages to Ms. Heilprin, in an amount set by this Court, that would fully compensate her for the physical and emotional distress, humiliation, and other damages she has suffered as a result of Defendants' violation of the FHA, as alleged in this Complaint;

d)      That the Court award Ms. Heilprin punitive damages;

e)      That the Court award Ms. Heilprin costs and reasonable attorney's fees in this action; and

f)      That the Court award any and all such further relief as this Court may deem proper.

Dated this 3rd day of November, 2020.

Respectfully submitted,
LOUISIANA FAIR HOUSING ACTION CENTER (LaFHAC)
1340 Poydras Street, Suite 710
New Orleans, LA 70112

ELIZABETH JOANNE OWEN
Bar No. 33620
eowen@lafairhousing.org
(504) 708-5291
(504) 684-5687
PETER THEIS
Bar No. 34786
ptheis@lafairhousing.org
(504) 208-5070

TULANE LAW CLINIC
6329 Freret Street

14

New Orleans, LA  70118
(504) 865-5153
(504) 862-8753 (fax)

By:

**/s/ M. Lucia Blacksher Ranier, T.A.**
M. LUCIA BLACKSHER RANIER
Bar No. 26605
lblacksh@tulane.edu
(504) 862-8892
SAMUEL BRANDAO
Bar No. 34456
sbrandao@tulane.edu
(504) 865-5987
*Supervising Attorneys*

Ellen D. George
Isaac Manoff
Read C. Rydberg
*Student Attorneys*

*Attorneys for Plaintiff*
*LaFHAC Cooperating Attorneys*